DUCKER, JUDGE:
The Claimant, Peters Fuel Corporation, a corporation with principal office and headquarters in Oakland, Maryland, licensed to do business in West Virginia, sold gasoline and diesel fuel to Franklin W. Peters and Associates, an individual proprietorship, the latter being by amendment also made a claimant herein, for use by the latter in mine reclamation work at Elkins, West Virginia. Gasoline taxes at seven cents a gallon were assessed against claimants for the period, July 20, 1966 to December 29, 1966, amounting to $7,124.60, and for the period, January 1, 1967 to February 28, 1967, amounting to $1,575.07, making a total assessment of $8,699.67, from which total amount the sum of $403.15 was deducted as not properly chargeable. Claimants, who paid such taxes under protest, allege that they have been unlawfully and unjustly required to pay $8,296.52 and here ask that said amount be refunded to them because the gasoline and diesel fuel was used in work done by Franklin W. Peters and Associates under the latter’s contract with the Federal Government, and, therefore, such sales were exempt from the payment of the gasoline tax.
One of the two questions here involved is whether the claimants complied with the legal requirements pertaining to the returns, payment and refunds of such taxes paid. The amount of gallonage involved is not in question. The claimants base their case principally on the claim that (1) the taxes paid are not legal and are refundable under Code Chapter 11, Article 1, Section 2A, (2) that Code Chapter 11, Article 14 (the Gasoline Tax statute) does not authorize any “assessment” *159 to be made by the Tax Commissioner, (3) that the latter section of the Code does not provide for a hearing or an appeal therefrom, and that the ninety day provision for applying for a refund is unreasonable and unconstitutional, and (4) that the State has been unjustly enriched and in equity and good conscience should refund the taxes so collected by it.
A recital of the facts in their chronological order is necessary to see what transpired in regard to the matter under consideration.
As has been shown, the taxes for which refunds are now claimed were for a period of a little over the last five months in 1966 and for the first two months in 1967. Taxes on these sales were not reported by claimants, who said they did not do so because they were orally advised that these sales were exempt from the tax. An audit by the Tax Commissioner was made for the said first period on February 15, 1967. Claimants petitioned the Tax Commissioner on March 1, 1967 for a reassessment for the said first period and on May 24, 1967 the Commissioner after a hearing held that the claimants were liable for the taxes, exclusive of penalties, of $7,124.60 for said period. The taxes were on August 16, 1967 paid under protest and no appeal was taken. On October 8, 1967 the Commissioner made a further and additional audit for the said second period resulting in the issuance of a statement of liability on the part of the claimants for $1,525.07, which taxes were paid on August 20, 1968, apparently under protest, with no appeal in either case within ninety days after payment. Claimants filed with the Tax Commissioner on January 4, 1969, their petition for a refund. On September 4, 1969 the Tax Commissioner made an Administrative Decision as provided in Code 11-14-20 denying petitioners’ claim for a refund and so notified the claimants, which notice was received by the claimants on September 10, 1969, and within the thirty day period specified in the statute, namely October 7, 1969, claimants wrote the Tax Commissioner that claimants were not satisfied with the Commissioner’s decision and requested the Commissioner to promptly institute a declaratory judgment suit to ascertain whether the tax has been lawfully or unlawfully collected. No further proceedings were had until the institution of this suit in this Court.
*160 While it appears to this Court that under the provisions of Code 11-1-2A the claimants may have had and may still have the remedy of mandamus in the courts of the state to determine their rights under said code provisions, the determination of the right to such remedy being not within this Court’s jurisdiction, we consider it our duty to first consider and adjudicate this claim as to the question of the applicability of Code 11-14-20, the gasoline statute, to the facts in this case.
The provisions of Code 11-14-20 provide that the Tax Commissioner shall cause a refund to be made only when an application for refund is filed with the Tax Commissioner, upon forms prepared and furnished by the Tax Commissioner, within ninety days from the date of purchase or delivery of thev gasoline, and that any claim for refund not filed within ninety days from the date of purchase or delivery of the gasoline shall not be construed to be or constitute a moral obligation of the State of West Virginia for payment. These provisions give a claimant who has paid the taxes the right to apply for a refund within ninety days of the sale or delivery of the gasoline. This was not done as payment was made only after hearings were had upon the claimants’ request for reassessment.
Claimants have evidently considered only the thirty day provision for appeal under Code 11-1A-2 as applicable to this claim, especially since they claim there was no basis for assessment, hearing, or appeal provided in the gasoline tax statute. The provisions of Code 11-14-20 are clear, unambiguous and reasonable, and have a very apparently definite purpose, and we are unable to interpret or construe them as authorizing anything other than strict compliance with them. Nor, in the absence of judicial or legislative pronouncement to such effect, do we consider it proper for this Court to determine the constitutionality of this legislative enactment. Here the legislature has prescribed a fair method for taxpayers to obtain refunds of taxes on sales which were exempt, but it has not allowed taxpayers to determine for themselves the matter of exemption. It first requires report of the sales and then gives ninety days for the filing of an application for refund. Here the taxpayers, relying on what they claim was *161 a verbal authorization by an employee of the State, did not pay the taxes. Such alleged authorization was not confirmed either in writing or by the testimony of the State employee, and, even if it were, the State cannot in tax matters be bound by unauthorized acts of its employees contrary to the statutes. There is no authority for such acts which could be the basis of loss of tax revenue and possible fraud, although in this case everything was done honestly and in good faith.
The legislature has here in advance declared a failure to follow the prescribed procedure as not to constitute a moral obligation on the State for payment. While this Court determines cases according to law and our findings are then considered by the legislature as moral obligations, our jurisdiction is thus limited by the Gasoline Act specifically denying such a claim a moral obligation status.
It is, indeed, unfortunate this situation deprived the claimants from recovering the amount of these taxes from the Federal Government as an expense in their performing their contractual work, but this is a consequence of the claimants’ failure to comply with the requirements of the tax laws for which the State cannot be held responsible.
As to the question of the right of the Tax Commissioner to make assessments and for the taxpayer to have no right of appeal, we see no reason for specific provisions for assessment, as it is the inherent duty of the Tax Commissioner to audit, when requested, the tax returns and advise the taxpayers of any deficiencies or overpayments, otherwise he could hardly function in his duty to determine and collect taxes. Furthermore, we are of the opinion that the legislature has prescribed a method and a remedy which we consider as reasonable, and which having been so prescribed, we cannot disregard.
For these reasons we are of the opinion that the claimants have failed to show grounds for an allowance of their claim, and we, therefore, disallow the same.
As heretofore indicated, the remedy in this case may have been and may still be solely under the general refund statute (Code 11-1-2A). That section of the statute provides that:
“any taxpayer claiming to be aggrieved through being required to pay any tax into the treasurer of this State, *162 may, within three years from the date of such payment, and not after, file with the official or department through which the tax was paid, a petition in writing to have refunded to him any such tax, or any part thereof, the payment whereof is claimed by him to have been required unlawfully.”
The procedure is specified for such determination. If, upon such determination, the Tax Commissioner shall determine the taxes collected to be lawful, he shall so notify the taxpayer who has thirty days to advise the Commissioner that he is not satisfied with the ruling and that he requests the Commissioner to institute a declaratory judgment suit to determine the validity of the question. If such notice is given to the Commissioner, the statute provides that the Commissioner “shall promptly institute against said taxpayer, in a court of competent jurisdiction, a declaratory judgment proceeding to determine the question”. The claimants complied with this statute within the thirty day period provided, but, so far as this Court is advised, no declaratory judgment proceedings were instituted and nothing done to compel the Commissioner to so act. While under the statute the Tax Commissioner may, on his own initiative file suit, it was mandatory upon him to file a declaratory judgment suit when requested by the taxpayer to do so. It was not a discretionary matter. There, in the opinion of this Court, the claimants had and may still have the right to require the Commissioner to do his duty, namely institute the declaratory judgment suit.
The Act creating the Court of Claims, Code 14-2-14, provides as follows:
“The jurisdiction of the Court shall not extend to any claim: ... 5. With respect to which a proceeding may be maintained against the state by or on behalf of the claimant in the courts of the state.”
This Court has specifically held that where a writ of mandamus is obtainable, there is a proceeding which can be maintained against the State in the Courts of the State, such as compelling the State Road Commission to institute condemnation proceedings to determine damages to real estate and compensate property owners. Johnson v. State Road Commission, 7 Court of Claims Reports p. 186. We are of the opinion that inasmuch as it appears that the claimants may have had *163 and may still have the right under the general refund statute, Code 14-2-14, to require the Tax Commissioner to institute a declaratory judgment suit, this Court should disallow their claim herein for such additional reason.
Accordingly, the Claimants’ petition herein is dismissed.
No award.